IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CR-00055-F-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TRANQUERE SANCHEZ IRONS, | ) | |
| Defendant. | ) | |

This matter is before the court on Tranquere Sanchez Irons' Motion to Suppress [DE-36]. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons addressed below, Irons' Motion to Suppress is ALLOWED.

## I. Factual Background[1]

On July 24, 2007, Irons pled guilty to the offense of robbery with a dangerous weapon, in violation of N.C. Gen. Stat. § 14-87, in Robeson County Superior Court. Def.'s Mot. Suppress [DE-36] Ex. 1. Irons was sentenced to a minimum term of 100 months and a maximum term of 129 months of imprisonment in the custody of the North Carolina Department of Corrections. *Id.*

On or about October 10, 2015,[2] Irons was released from custody to the supervision of the North Carolina Department of Public Safety ("NCDPS") in Robeson County, and he began his nine-month term of post-release supervision. *Id.* at Ex. 2; *see* N.C. Gen. Stat. § 15A-1368.2(a)

---

[1] The court's factual background comes from the parties' representations found in Irons' Motion to Suppress and Reply and the Government's Response. Because the dispositive facts are not in dispute, the court declines to hold an evidentiary hearing.

[2] Defendant contends that he was released "on October *10*, 2015." Def.'s Mot. Suppress [DE-36] at 1. The Government asserts that Defendant was released "on or about October *15*, 2015." Gov't.'s Resp. [DE-39] at 1.

(providing that a defendant "shall be released from prison for post-release supervision on the date equivalent to his maximum imposed prison term less . . . nine months"). One condition of Irons' post-release supervision required him to

> [s]ubmit at reasonable times to searches of [his] person, premises, or any vehicle under [his] control by [his] supervising officer for purposes reasonably related to [his] supervision.

Def.'s Mot. Suppress [DE-36] Ex. 2. From Irons' release on or about October 10, 2015 to February 23, 2016, he was supervised by Officer Lynn F. Floyd, Jr., a NCDPS probation/parole officer based in Lumberton, North Carolina.

On February 23, 2016, between 6:00 a.m. and 6:15 a.m.,[3] a warrantless search was conducted at Irons' residence, located at 214 Hearty Road in Lumberton, North Carolina. The search was part of a large-scale joint operation referred to as "Operation Zero Hour,"[4] which included members of the United States Marshals Service, the North Carolina State Highway Patrol, the Robeson County Sheriff's Office, the Lumberton Police Department, NCDPS, the Fayetteville Police Department, the Cumberland County Sheriff's Office, the North Carolina Division of Community Corrections, the North Carolina Department of Adult Corrections Special Operations and Intelligence Unit, the Federal Bureau of Investigation, the United States Attorney's Office for the Eastern District of North Carolina, the District Attorney's Office for North Carolina Judicial District 16B, and the Bureau of Alcohol, Tobacco, Firearms and

---

[3] Defendant asserts that the search occurred "around 6:00 a.m." Def.'s Mot. Suppress [DE-36] at 3. The Government contends that the search occurred "at approximately 6:15 a.m." Gov't.'s Resp. [DE-39] at 2.

[4] Operation Zero Hour was conducted on February 23-25, 2016 in Robeson County, North Carolina. The operation included 180 law enforcement officers from twenty-one participating agencies.

2

Explosives. Christopher Cook and Ashleigh Whitley were present from NCDPS. Officer Floyd, Irons' post-release supervision officer, was not present at the search and did not participate in the operation beyond later identifying Irons in a post-raid photograph line-up at the Robeson County Sheriff's Office.

When the law enforcement officers entered Irons' home, he was present and sleeping with his girlfriend, Rashita Vanderhall. After detaining Irons, the officers conducted a search of the home. NCDPS Officer Chris Cook found a loaded Bryco, Model Jennings, 9mm pistol and a cell phone under the pillow where Irons had been resting his head. Next to the bed, there was a dresser with the bottom drawer open. In the drawer, there was a green Crown Royal bourbon bag that contained slightly less than one ounce of crack cocaine. There was approximately $400 in cash under the bag. In the closet of the bedroom, the officer also located a Panther Arms, Model A-15, .223 caliber rifle.

Irons was arrested and transported to the Robeson County Sheriff's Office. NCDPS Officer Floyd, Irons' supervising officer, viewed a photograph line-up of eight individuals, including Irons. Floyd positively identified Irons as a convicted felon who was under his supervision.

The same day, Deputy Farnsworth and Special Agent Crumley conducted an audio-recorded custodial interview of Irons. During the interview, Irons was advised of his *Miranda* rights and invoked his right to counsel. Irons' girlfriend was also interviewed. She denied any knowledge of the guns and drugs found in the house.

Irons' post-release supervision status was revoked by the Post-Release Supervision and Parole Commission. Irons was returned to the custody of the North Carolina Department of

3

Corrections to serve up to the remainder of his previously-imposed maximum term of imprisonment. *See* N.C. Gen. Stat. § 15A-1368.3(c)(1) (Supervisees who commit an additional crime while on release "will be returned to prison up to the time remaining on their maximum imposed terms.")

## II. Procedural Background

On May 10, 2016, Irons was charged in a three-count indictment in the Eastern District of North Carolina. *See* Indictment [DE-3]. In Count One, Irons was charged with possession with intent to distribute a quantity of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1). *See id.* Count Two charged Irons with possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). *See id.* In Count Three, Irons was charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924. *See id.* Irons' arraignment and trial are scheduled for this court's February 13, 2017 term of court.

On October 14, 2016, Irons filed the instant Motion to Suppress [DE-36]. On November 16, 2016, the Government filed a Response [DE-39], to which Irons filed a Reply [DE-42].

## III. Legal Background

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures are *per se* unreasonable, subject to a few well-established exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Kentucky v. King*, 563 U.S. 452, 459-60 (2011). A parolee's expectation of privacy is reduced, but it still falls within the Fourth Amendment's protection against unreasonable searches and seizures. *United States v. Bradley*,

4

571 F.2d 787, 789 n.2 (4th Cir. 1978).

"The ultimate touchstone of the Fourth Amendment is reasonableness." *King*, 563 U.S. at 459 (internal quotation marks omitted). With a probationer, the reasonableness of a search must be assessed in light two factors: (1) the specific conditions of probation and (2) whether there is reasonable suspicion to support the search. *See United States Knights*, 534 U.S. 112, 122 (2001) (holding that the warrantless search was reasonable because it was "supported by reasonable suspicion and authorized by a condition of probation").

In *Samson v. California*, 547 U.S. 843 (2006), the Supreme Court upheld the warrantless search of a parolee in the absence of reasonable suspicion where the parolee had signed a parole agreement allowing parole officers to search the parolee "at any time of the day or night, with or without a search warrant and with or without cause." *Id.* at 846. The Supreme Court acknowledged that some states and the federal government require a level of individualized suspicion but also implied that in such jurisdictions a suspicionless search would be impermissible. *Id.* at 855. "Parolee searches are . . . an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by state law." *United States v. Freeman*, 479 F.3d 743, 747-48 (10th Cir. 2007).

In *United States v. Midgette*, 478 F.3d 616 (4th Cir. 2007), the Fourth Circuit Court of Appeals held that warrantlesss probation searches, conducted in conformity with N.C. Gen. Stat. § 15A-1343(b)(13), are reasonable under the Fourth Amendment. *Id.* at 624. The Fourth Circuit noted that North Carolina has narrowly tailored the authorization for warrantless searches of probationers by imposing the following restrictions: the sentencing judge must impose the warrantless search condition, and not all probationers are subject to it; the search must be

5

conducted at a reasonable time; the probationer must be present at the time of the search; the search must be conducted for purposes specified by the court in the conditions of probation; and the search must be reasonably related to the probationer's supervision. *Id.* at 623-24.

Under North Carolina law, there are three restrictions imposed on warrantless searches of individuals on post-release supervision: (1) the searches must be conducted at "reasonable times," (2) the searches must be conducted by a "post-release supervision officer," and (3) any search must be conducted for purposes "reasonably related to the post-release supervision." N.C. Gen. Stat. § 15A-1368.4(e)(10).[5] Under the terms of Irons' post-release supervision agreement, only searches conducted by *his own supervising officer* were permissible. *See* Def.'s Mot. Suppress [DE-36] at Ex. 2.

## IV. Discussion

### A. Irons was subject to a warrantless search condition.

The Government argues that the search of Irons' home, conducted on February 23, 2016, was authorized under the warrantless search condition imposed under Irons' post-release supervision. Gov't.'s Resp. [DE-39] at 3. As noted, warrantless searches are *per se* unreasonable, subject to only a few well-established exceptions. *Katz*, 389 U.S. at 357; *King*, 563 U.S. at 459-60. Therefore, unless the Government can establish that the search of Irons' home fell within one of those exceptions, the search violated the Fourth Amendment.

---

[5] N.C. Gen. Stat. 15A-1368.4(e)(10), in pertinent part, provides that an individual must

> [s]ubmit at reasonable times to searches of the supervisee's person by a post-release supervision officer for purposes reasonably related to the post-release supervision. The Commission shall not require as a condition of post-release supervision that the supervisee submit to any other searches that would otherwise be unlawful.

6

At the outset, the court notes that the Government's assertion Irons was on "supervised probation" and subject to "special conditions" for probation, including the requirement found in N.C. Gen. Stat. § 15A-1343(b)(13). *See* Gov't.'s Resp. [DE-39] at 4. The Government's argument is based on a misunderstanding because Irons was not on probation. Irons was on post-release supervision, which is distinguishable. *Compare* North Carolina General Statutes, Chapter 15A, Article 82 (governing probation) *with* North Carolina General Statutes, Chapter 15A, Article 84a (governing post-release supervision). Irons was not subject to the North Carolina conditions of probation statute, N.C. Gen. Stat. § 15A-1343; thus, the Government's arguments with respect to that statute have no bearing on this case.

Irons was on post-release supervision with conditions stated in N.C. Gen. Stat. § 15A-1368.4. That statute provides that all supervisees are subject to the condition that they "not commit another crime during the period the supervisee remains subject to revocation." N.C. Gen. Stat. § 15A-1368.4(b). For supervisees that have been convicted of a sex offense or for persons convicted of offenses involving physical, mental, or sexual abuse of a minor, there is a set of required conditions, which includes a warrantless search condition. *Id.* at § 15A-1368.4(b1)(8). For all other supervisees, post-release supervision *could* require the supervisee to "[s]ubmit at reasonable times to searches of the supervisee's person by a post-release supervision officer for purposes reasonably related to post-release supervision." *Id.* at § 15A-1368.4(e)(10). Moreover, as a discretionary condition, the Post-Release Supervision and Parole Commission "may impose conditions on a supervisee it believes reasonably necessary to ensure that the supervisee will lead a law-abiding life or to assist the supervisee to do so." *Id.* at § 15A-1368.4(c).

7

In this case, one of the conditions of Irons' post-release supervision provided that he would "submit at reasonable times to searches of [his] person, premises, or any vehicle under [his] control by [his] supervising officer for purposes reasonably related to [his] supervision." Def.'s Mot. Suppress [DE-36] Ex. 2. By the express terms of that condition, Irons was subject to warrantless searches only when (1) conducted by his supervising officer, (2) at reasonable times, and (3) for purposes reasonably related to his supervision. *Id.* This is the only warrantless search condition to which Irons was subject for his post-release supervision.

**B. The warrantless search of Irons' home violated his warrantless search condition because it was not conducted at a reasonable time.**

An individual's expectation of privacy is at its apex in his home. *United States v. Gray*, 491 F.3d 138, 145-46 (4th Cir. 2007). Generally, an individual has a reasonable expectation of privacy in the activities within his home; thus, "the home is accorded the full range of Fourth Amendment protections." *Lewis v. United States*, 385 U.S. 206, 211 (1966); *see Florida v. Jardines*, — U.S. —, 133 S. Ct. 1409, 1414 (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals.").

A search conducted at night is more intrusive than a search conducted during the day. *See Coolidge v. New Hampshire*, 403 U.S. 443, 477 (1971) (describing midnight entry into a dwelling as an "extremely serious intrusion"). The Supreme Court has found it "difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home." *Jones v. United States*, 357 U.S. 493, 498 (1958).

In this case, the terms of Irons' warrantless search condition required any warrantless searches to occur "at reasonable times." Def.'s Mot. Suppress [DE-36] Ex. 2. The search of Irons' residence occurred between 6:00 a.m. and 6:15 a.m on February 23, 2016. On that day,

the time of sunrise in Lumberton, North Carolina, where the search occurred, was 6:51:52 a.m. *See* Sunrise Sunset, http://sunrise-sunset.org/us/lumberton-nc/2016/2 (last visited December 6, 2016). Thus, it was still dark when the officers entered and searched Irons' home. The Government admits that the officers found Irons and his girlfriend still asleep in bed. Gov't.'s Resp. [DE-39] at 2. This warrantless intrusion into Irons' home was well before daylight, and therefore, the search was not conducted at a reasonable time.

### C. The warrantless search of Irons' home violated his warrantless search condition because it was not conducted for purposes reasonably related to his supervision.

As noted, any warrantless search of Irons must be conducted "for purposes reasonably related to [his] supervision." Def.'s Mot. Suppress [DE-36] Ex. 2. It is undisputed that Iron's supervising officer, Officer Floyd, was not present at the time of the search. Instead of the search being supervisory in nature, it was conducted as part of a joint law enforcement initiative referred to as Operation Zero Hour. Officer Floyd participated in Operation Zero Hour only to the extent that he positively identified Irons in a post-raid photograph line-up. Because the warrantless search of Irons' home was not conducted or supervised by his supervising officer, the search was not reasonably related to his supervision.

### D. The guns and drugs seized during the illegal search of Irons' home must be suppressed.

Because the warrantless search of Irons' home did not comply with the conditions of his warrantless search condition, he was not required to submit to the search. *See* N.C. Gen. Stat. § 15A-1368.4(e)(10) (providing that supervisees are not required to "submit to any other searches that would otherwise be unlawful"). The warrantless search of Irons' home violated North Carolina law and his rights under the Fourth Amendment.

Having concluded that law enforcement violated the Fourth Amendment during the

9

search of Irons' home, the court must now determine whether the discovery of the firearms and drugs must be suppressed. The exclusionary rule is "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States,* 564 U.S. 229, 231-32 (2011). Its "sole purpose is to deter future Fourth Amendment violations." *Id.* at 236-37. "When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* at 238 (internal quotations omitted).

In this case, the officers acted with reckless disregard for Irons' Fourth Amendment rights when they conducted a warrantless search of his home before daylight on February 23, 2016. The court finds that the deterrent value of the exclusionary rule in this case outweighs the resulting social costs. The court further finds that the firearms and drugs were products of the illegal search. Consequently, the evidence obtained by law enforcement officials during their search, including the firearms and drugs, must be suppressed.

## V. Conclusion

In light of the foregoing, Iron's Motion to Suppress [DE-36] is ALLOWED. Accordingly, the evidence obtained by law enforcement officers as a result of the unconstitutional search is hereby SUPPRESSED.

SO ORDERED.

This, the 7 day of December, 2016.

James C. Fox
JAMES C. FOX
Senior United States District Judge